UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Kimberly Johnson, as Executrix of the
Estate of Douglas Johnson, deceased,

      Plaintiff,                                Case No.: 13-10198

v.                                        Honorable Sean F. Cox

Doodson Insurance Brokerage of Texas, LLC
d/b/a CSI Special Event Insurance, d/b/a CSI
Insurance Group,

      Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This is a negligence/breach of contract case. Plaintiff Kimberly Johnson, on behalf of the estate of her deceased husband, Douglas Johnson ("Plaintiff"), alleges that Doodson Insurance Brokerage of Texas, LLC d/b/a CSI Insurance Group ("Defendant" or "CSI") negligently failed to procure insurance for National Pastime Sports, LLC ("NPS"), and that Douglas Johnson's injuries caused by NPS's equipment were, therefore, not covered by any policy of liability insurance. Plaintiff has also alleged a breach of contract claim on the same grounds.

This case is before the Court on Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. #14). The motion has been fully briefed by the parties. On February 20, 2014, this Court heard oral argument on the motion. For the reasons set forth below, the Court shall GRANT Defendant's motion and DISMISS Plaintiff's Amended Complaint with prejudice.

## BACKGROUND

In January 2010, the Cleveland Indians Baseball Company ("Cleveland Indians") hired National Pastime Sports, LLC ("NPS"), a Michigan corporation, to produce several Kids Fun Day

events at Cleveland Indians games in Cleveland, Ohio.  (Amd. Compl. at ¶ 7; *see also* Amd. Compl. Ex. A).  The Kids Fun Day events were to showcase many attractions, including an inflatable bounce house and inflatable slide.  (Amd. Compl. at ¶ 9).  The production agreement between the Cleveland Indians and NPS required NPS to obtain $5 million in comprehensive general liability insurance coverage.  (Amd. Compl. at ¶ 11).

In March 2010, NPS submitted an Application for Insurance (Amd. Compl. at Ex. B) to Defendant CSI.  On that Application for Insurance, NPS stated that the event(s) will include inflatables and/or bounce houses.  (Amd. Compl. at Ex. B p. 1).

CSI arranged for NPS to be insured through New Hampshire Insurance Company ("NHIC"). (Amd. Compl. at ¶ 15-16).  The insurance policy between insurer NHIC and insured NPS apparently "excluded injuries resulting from inflatables, temporary structures, and/or amusement devices." (Amd. Compl. at ¶ 19).  Plaintiff claims that CSI admits that it failed to procure insurance covering inflatable structures, despite NPS's indication that inflatables would be used at the Kids Fun Day events.  (Amd. Compl. at ¶ Ex D., e-mails dated 6/22/10).

On June 12, 2010, Plaintiff Kimberly Johnson's husband, Douglas Johnson, attended a Cleveland Indians baseball game at Progressive Field in Cleveland, Ohio.  (Amd. Compl. at ¶ 17). Mr. Johnson was standing near the Kids Fun Day area and observing a Cleveland Indians' wall of fame display when one of NPS's inflatable slides fell over onto Mr. Johnson and trapped him beneath it.  (Amd. Compl. at ¶ 20-21).  Mr. Johnson was severely injured in the incident and eventually died of his injuries.  (Amd. Compl. at ¶ 22).

Much litigation followed.  On December 23, 2010, Plaintiff filed suit against NPS and others in state court in Cleveland, Ohio.  (Amd. Compl. at ¶ 28).  That case resulted in a $3.5 million

2

default judgment against NPS in Plaintiff's favor.  As of the filing of Plaintiff's Amended Complaint, Plaintiff has received no payments from NPS and now believes that NPS is unable to satisfy the judgment against it.  (Amd. Compl. at ¶ 34-36).

On April 1, 2011, NPS filed a declaratory action with this Court against CSI and NHIC, seeking a declaration that NHIC had a duty to defend and indemnify NPS in the Ohio state court action, and also alleging a claim of negligent procurement of insurance against CSI.  (NPS v. CSI, Case No. 11-11378, Doc. #1).  Many crossclaims and counterclaims were filed, and the Cleveland Indians joined the case against CSI as a fourth-party plaintiff (Case No. 11-11378, Doc. #25).

It appears that many, if not all, of the parties involved filed cross-motions for summary judgment.  This Court granted Defendant CSI's motion for summary judgment as to the Cleveland Indian's fourth party complaint. (Case No. 11-11378, Doc. #49; *National Pastime Sports LLC, et. al., v. CSI Insurance Group, et. al.*, 830 F.Supp.2d 348 (E.D. Mich. 2011)).  The Court held that the Cleveland Indians did not have a negligence cause of action against CSI for its negligent procurement of insurance because CSI did not owe a common law duty to the Cleveland Indians, and did not otherwise owe a duty to Cleveland Indians that was "separate and distinct" from their contractual duties to NPS.  *National Pastime*, 830 F. Supp. 2d at 353-54.

On August 23, 2013, the Sixth Circuit reversed this Court's grant of summary judgment to CSI, holding that "a contracting party owes a separate and distinct common law duty of care to all those whom the party knew or reasonably should have foreseen would be injured by the party's negligent acts or omissions."  *Cleveland Indians Baseball Co. v. N.H. Ins. Co., et. al.*, 727 F.3d 633, 638 (6th Cir. 2013).

By the time the Sixth Circuit issued its opinion in that case, Plaintiff Kimberly Johnson had

already filed suit against CSI in this Court, alleging both negligence and breach of contract causes

of action (Doc. #1, filed 1/17/13). Plaintiff filed an Amended Complaint on March 26, 2013. (Doc.

#12). Thereafter, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint. (Doc. #14).

As the Sixth Circuit's opinion in *Cleveland Indians* was issued while Defendant's motion was

pending, this Court invited the parties to submit supplemental briefs addressing the relevancy of that

opinion to the present motion. (Doc. #24).[1]

## STANDARD OF DECISION

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and must

accept all the factual allegations contained in the complaint as true. *Lambert v. Hartman*, 517 F.3d

433, 439 (6th Cir. 2008).

In order to survive a Rule 12(b)(6) motion to dismiss, Plaintiff's complaint need contain only

"enough facts to state a claim for relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely consistent with a

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to

relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 557.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*,

556 U.S. at 679.

---

[1]Plaintiff (Doc. #26) and Defendant (Doc. #24) did, in fact, submit supplemental briefs addressing the relevancy of the *Cleveland Indians* opinion to Defendant's current motion to dismiss. The parties made a plethora of arguments that this Court considered, but that did not ultimately affect the Court's analysis of the issues as presented in the parties' original briefs.

# ANALYSIS

## I.    Count One: Negligence

Plaintiff has pleaded a claim against Defendant sounding in negligence.  (Amd. Compl. ¶¶ 37-42).  Plaintiff alleges that "as a patron physically injured at a Kids Fun Day event, Plaintiff's decedent . . . would foreseeably have benefitted from the aforementioned insurance contract and/or would foreseeably have been injured by Defendant CSI's negligent failure to procure insurance covering injuries relating to inflatables . . . ."  (Amd. Compl. ¶ 38).  Plaintiff further claims that "Defendant CSI owed a duty to Plaintiff's decedent, Mr. Johnson, to exercise reasonable care in the performance of its contractual undertaking, i.e. procuring insurance coverage for the Kids Fun Day Events which, as was known to Defendants, were to include activities involving inflatables . . . ." (Amd. Compl. ¶ 39).

### A)        Does Texas or Michigan Law Apply To Plaintiff's Negligence Claim?[2]

---

[2] Plaintiff argues that Defendant should be judicially estopped from asserting that the Court should apply Texas law to this case because Defendant allegedly "took the position that Michigan law applied" in the prior case involving National Pastime Sports and Cleveland Indians.  (Pl.'s Resp. at 12).  The Court finds this argument without merit for two reasons.  First, Defendant did not assert that Michigan law applied in the prior action, nor did it "persuade" this Court to apply Michigan law. Rather, it did not challenge this Court's application of Michigan law at that time.  *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (to determine whether judicial estoppel applies, a court must "inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . .").  Additionally, Defendant's allegedly contrary "positions" are not clearly inconsistent because there are different parties involved in the cases.  There, the plaintiff was National Pastime Sports, a Michigan company, and Plaintiff Kimberly Johnson was not a party. *See id.* (to apply judicial estoppel, "a party's later position must be 'clearly inconsistent' with its earlier position.'"). The Court finds Defendant is not judicially estopped from arguing that Texas law applies in this case.

According to the parties, this case presents a choice of law issue. The parties represent that there are four states that may have an interest in having their law applied to this case: 1) Ohio, where Plaintiff's decedent was injured; 2) Pennsylvania, where Plaintiff and her decedent resided at the time of the injury; 3) Michigan, the forum where Plaintiff has chosen to litigate this case, as well as the state of residence of non-party NPS; and 4) Texas, the state where Defendant resides and does business. The parties appear to agree that neither Pennsylvania nor Ohio have an interest in having their substantive law applied. However, the parties disagree as to whether Michigan or Texas law should govern.

The Court has jurisdiction over this case based solely on the diversity of the parties. Typically, in diversity cases, the Court applies the law of the forum state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). When the parties disagree as to what state's laws should govern a dispute, however, the Court must apply the forum state's choice of law rules to determine which state's law it should apply. *Inland Waters Pollution Control, Inc. v. Jigawon, Inc.*, 2008 WL 205209 at *7 (E.D. Mich. 2009), *citing Equitable Life Assur. Soc. of U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998).

The Court must first determine whether the relevant states' laws are actually in conflict because "[a]bsent a conflict between the laws, the Court properly applies the law of the forum state." *Id.*, *citing Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 n.2 (6th Cir. 2000). Here, the relevant states are Texas and Michigan.

> **1.    Is There A Conflict Between Texas and Michigan Law Concerning Plaintiff's Negligence Claim?**

The elements of a negligence claim in Michigan and Texas are identical: defendant must owe

a duty to plaintiff, defendant must have breached that duty, and defendant's breach must have proximately caused plaintiff's damages. *See Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001); *Schultz v. Consumers Power Co.*, 443 Mich. 445, 449 (1993). Here, the parties' dispute appears to hinge on whether Defendant owed Plaintiff a duty of care. Whether a defendant owed a duty to a plaintiff is a question of law. *In re Certified Question From Fourteenth Dist. Ct. Of App. of Tex.*, 479 Mich. 498, 504 (2007).

### i.       Insurance Broker's Legal Duties Under Texas Law

In Texas, an insurance broker who contracts to procure insurance for a client has a duty to use reasonable diligence in procuring the insurance, and must inform the client if unable to do so. *Brannan Paving GP, LLC v. Pavement Markings, Inc.*, 2013 WL 3832717 at *10 (Tex. App. 2013). "The nature of the relationship between the insurance broker and the client is a significant consideration in determining the existence of a duty of care in cases involving professional negligence." *Id.*, *citing West Houston Airport, Inc. v. Millenium Ins. Agency, Inc.*, 349 S.W.3d 748, 754 (Tex. App. 2011). For any plaintiff to sustain a claim for professional negligence against an insurance broker in Texas, the plaintiff and the broker must be in privity of contract. *Id.*, *citing West Houston*, 349 S.W.3d at 752. "Privity for purposes of professional negligence is the contractual connection or relationship existing between two or more parties; the relationship can be formed by express or implied contract." *West Houston*, 349 S.W.3d at 752.

### ii.      Insurance Broker's Legal Duties Under Michigan Law

In Michigan, on the other hand, no privity of contract is required. *Cleveland Indians Baseball Co. v. N.H. Ins. Co.*, 727 F.3d 633, 638 (6th Cir. 2013) ("Michigan law does not require that 'plaintiff have a link such as privity . . . with defendant in order for a duty of reasonable care to

7

exist.'").  "[A] contracting party owes a separate and distinct common law duty of care to all those whom the party knew or reasonably should have foreseen would be injured by the party's negligent acts or omissions."  *Id.*, *citing Hill v. Sears, Roebuck and Co.*, 822 N.W.2d 190, 196-98 (Mich. 2012) and *Loweke v. Ann Arbor Ceiling & Partition Co.*, 809 N.W.2d 553, 556 (Mich. 2011); *see also Auto-Owners Ins. Co. v. Michigan Mut. Ins. Co.*, 223 Mich. App. 205, 212 (1997).  "Michigan law recognizes a cause of action in tort for an insurance agent's failure to procure requested insurance coverage . . . ."  *Holton v. A Ins. Associates, Inc.*, 255 Mich. App. 318, 324-25 (2003) (collecting cases).

Thus, it appears that Texas and Michigan law are in conflict regarding whether or not Defendant owed Plaintiff a duty.  For Plaintiff's negligence claim to proceed, Texas law requires a showing of privity between the insurance broker and the injured third party whereas Michigan law clearly does not.  Therefore, this Court must determine which law applies to Plaintiff's negligence claim.

### 2.      Under Michigan's Choice of Law Rules, This Court Will Apply Texas To Plaintiff's Negligence Claim

This Court must apply the choice of law rules of its forum state of Michigan.  *See Inland Waters*, 2008 WL 205209 at *7.  In tort cases, there is a presumption that forum law applies because Michigan courts apply Michigan law unless there is a "rational reason" to do otherwise.  *Sutherland v. Kennington Truck Service, Ltd.*, 454 Mich. 274, 286 (1997).

To determine whether a Michigan court has a "rational reason" to displace Michigan law, a two part test is employed.  First, the Court must determine whether any other state has an interest in having its law applied to the case.  *Id.*  "If no state has such an interest, the presumption that

8

2:13-cv-10198-SFC-MKM    Doc # 28    Filed 02/28/14    Pg 9 of 19    Pg ID 294

Michigan law will apply cannot be overcome." *Id.* "If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.*, *citing Olmstead v. Anderson*, 428 Mich. 1, 29-30 (1987).

### i.    Texas Has An Interest In Having Its Law Applied In This Case

Defendant argues that Texas has an interest in having its law applied to this case because "Texas has an interest in regulating the conduct of companies that reside there, particularly when the plaintiff seeks to impose liability on those companies, contrary to Texas law." (Def.'s Br. at 10). Defendant also appears to argue that Texas law should apply because Defendant's breach, if any, occurred in Texas. (Def.'s Br. at 11).

Plaintiff responds that neither of these interests can overcome the presumption that Michigan law applies because Defendant's mere residency in Texas is not enough, (Pl.'s Resp. at 8, *citing Inland Waters*, 2008 WL 205209 at *8), and because Michigan no longer presumptively follows the law of the state where the wrong (or part of the wrong) occurred (also known as "lex loci delicti"). (Pl.'s Resp. at 8, *citing Olmstead*, 428 Mich. at 29).

This case involves a Texas defendant and a Pennsylvania plaintiff. Plaintiff's current suit relies on Defendant's alleged failure to procure the proper insurance for NPS. Defendant procured (or failed to procure) insurance for NPS from its place of business in Texas. Thus, the "injury" here—the negligent procurement of insurance—must have occurred in Texas.

"Michigan law recognizes the place where the injury was sustained as the place of the wrong; the place where the last event necessary to create liability occurred." *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 698 (6th Cir. 2013), *citing Sutherland*, 454 Mich. App. 274, 562 N.W.2d at 468; *see also Burney v. P V Holding Corp.*, 218 Mich. App. 167, 174 (1996) ("Accordingly, under

*Olmstead*, Alabama has an interest in having its law applied because one of the parties is a citizen of the state where the wrong occurred."). "The injury state always has an interest in conduct within its borders." *Olmstead*, 428 Mich. at 28. Because Texas is the location where the "injury" occurred, and Texas has an interest in regulating the conduct of insurance companies within its borders, this Court finds that Texas does have an interest in having its law applied to this case.

### ii. Michigan Does Not Have An Interest In Having Its Law Applied In This Case

Because Texas has an interest in having its law applied, the Court must determine the extent of Michigan's interests in having forum law applied, and whether Texas's interests provide a "rational reason" to displace Michigan law. *See Sutherland*, 454 Mich. at 286.

Plaintiff argues that Michigan has an interest in having its law applied to this case because 1) the "factual underpinnings" of the underlying incident in this case are centered in Michigan; 2) Defendant has sufficient contacts with Michigan to subject Defendant to Michigan law; and 3) Michigan has an interest in protecting NPS, a Michigan company, from bankruptcy if Plaintiff is forced to execute its multi-million dollar judgment against NPS in lieu of recovering damages from Defendant. (Pl.'s Resp. at 9-11).

Defendant replies that even if Michigan has an interest in protecting a Michigan company from bankruptcy, that interest is irrelevant in this case because NPS is not a party to this litigation. Further, Defendant argues that bankruptcy would not necessarily cause the "demise" of NPS because there are other types of bankruptcy proceedings, such as Chapter 11 reorganization, that allow the business to continue on rather than liquidate. (Def.'s Reply at 2-3).

The parties' entire discussion regarding bankruptcy proceedings appears to be nothing more

10

than a red herring.  Neither party has cited any authority supporting the proposition that a state has an interest in protecting its resident companies from bankruptcy.  Additionally, even if that were a relevant state interest, the Court fails to conceive how that interest would carry any weight in this case given that NPS, the potentially bankrupt company, is not even a party to this litigation.  The Court finds that Michigan does not have an interest in this litigation based on the financial solvency of a non-party Michigan corporation.

As for Michigan's other alleged interests, the Court finds that they are not sufficient to warrant the application of Michigan law.  Again, Plaintiff has pointed to no authority suggesting that the location of the "factual underpinnings" of a case constitutes a state interest.  Moreover, the only "factual underpinning" that involves Michigan is the fact that NPS, a nonparty to this case, is a Michigan company.

Furthermore, even if Plaintiff is correct that Defendant has "minimum contacts" with Michigan, that is a necessary, but not sufficient, condition for Defendant to be subject to Michigan law in accordance with its due process rights.  Michigan does not have an interest in having its law applied to this case merely because the Defendant has "minimum contacts" with Michigan.

Neither Plaintiff nor Defendant resides in Michigan.  Few major events giving rise to Plaintiff's negligence claim occurred in Michigan.  Plaintiff has not stated any interest that Michigan has in having its law applied, other than the fact that Michigan is the forum where Plaintiff chose to file suit.  Therefore, the Court finds that Michigan has little or no interest in having its law applied to this case.

          **iii.**       **This Court Will Apply Texas Law To Plaintiff's Negligence Claim**

The Court finds that Texas has an important interest in having its law applied in this case. The Court further finds that Michigan has, at best, only a minimal interest in having its law applied to Plaintiff's negligence claim, other than the fact that Michigan is the forum in which Plaintiff has chosen to litigate.

Based on the foregoing, this Court concludes that Texas's interest provides a "rational reason" for this Court to forego the application of forum law in this case. This Court holds that Texas law applies to Plaintiff's negligence claim against Defendant.

       **B)**       **Under Texas Law, Plaintiff Has Failed To Stated A Claim, Sounding In Negligence, Upon Which Relief May Be Granted**

Under the lens of Texas law, this Court is compelled to find that Plaintiff's negligence claim fails. As discussed in Section (I)(A)(1), *supra*, in order for Plaintiff to state a claim against an insurance broker like Defendant for negligent procurement of insurance, Plaintiff and Defendant must stand in privity of contract. Plaintiff, in her Complaint, has not alleged that she and Defendant are in privity of contract. In fact, they probably do not stand in such relation to each other; there was no express or implied contract existing between Plaintiff and Defendant before this litigation commenced. Without privity of contract existing between the parties, this Court must GRANT Defendant's Motion to Dismiss Count One of Plaintiff's Complaint because Plaintiff has failed to state a claim under Texas law.

**II)**       **Count Two: Breach of Contract**

In Count Two of Plaintiff's Complaint, Plaintiff has pleaded a claim for relief based on Defendant's alleged breach of contract. (Amd. Compl. ¶ 43-49). Plaintiff alleges that "NPS and

Defendant CSI entered into an agreement when NPS retained CSI to procure commercial general liability insurance for NPS to cover the Kids Fun Day events . . . ." (Amd. Compl. ¶ 44). Plaintiff further alleges that "[i]n the Contract, which is evidenced by the Application for Insurance and the Certificate of Insurance, Defendant CSI agreed to procure commercial general liability insurance to cover NPS's liabilities for bodily injury and property damage in connection with the Kids Fun Day events." (Amd. Compl. ¶ 45). Plaintiff's position is that "Plaintiff's decedent, Mr. Johnson, as a patron of the Cleveland Indians game injured by a Kids Fun Day activity, was an intended third-party beneficiary of the contract between NPS and Defendant CSI." (Amd. Compl. ¶ 46). Plaintiff cites, as support for her third-party beneficiary claim, the case of *Auto Owners Ins. Co v. Michigan Mut. Ins. Co.*, 565 N.W.2d 907, 911 (Mich. Ct. App. 1997). Plaintiff claims that Defendant breached the contract by failing to procure the proper insurance. (Amd. Compl. ¶ 47).

A)      **Does Texas or Michigan Law Apply?**

The Court must determine whether Michigan or Texas law applies to Plaintiff's breach of contract claim. Again, because the parties agree that neither Pennsylvania nor Ohio law applies, the states' laws in consideration are those of Texas and Michigan.

1.      **Is There A Conflict Between Texas and Michigan Law?**

As an initial matter, the Court must determine whether the relevant states' laws are actually in conflict because "[a]bsent a conflict between the laws, the Court properly applies the law of the forum state." *Id.*, *citing Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 n.2 (6th Cir. 2000).

Defendant argues that Plaintiff's breach of contract claim fails whether Texas or Michigan law is applied because Plaintiff is not a third-party beneficiary of the NPS-CSI insurance contract under either state's laws. Nevertheless, Defendant argues that Texas law applies. Defendant

maintains that Plaintiff, as a nonparty to the alleged insurance contract, must be an intended third-party beneficiary to the insurance contract in order to sue Defendant for an alleged breach of the contract. (Def.'s Br. at 16, 18-19). Defendant argues that Plaintiff is not an intended third-party beneficiary under either of the relevant Texas or Michigan laws.

Plaintiff argues that Michigan law applies. Plaintiff claims that the *Auto Owners* case controls the outcome of her breach of contract claim, and that Plaintiff is an intended third-party beneficiary under the rule set out in that case. (Pl.'s Resp. at 19-20).[3] *See generally Auto-Owners*, 223 Mich. App. 205.

### i.    Texas Law Regarding Third-Party Beneficiaries

In Texas, a third party can only recover on a contract between two other parties if the contracting parties intended to "secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." *MCI Telecommunications Corp. v. Texas Util. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). The intent of the contracting parties is controlling. *Id.* "The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Id.* There is a presumption against third-party beneficiary agreements in Texas. *Farias v. Allstate Ins. Co.*, 2011 WL 2175220 at *3 (Tex. App. June 2, 2011), *citing id.* Plaintiff has the burden of proving that the contract exists and that she stands as a third-party beneficiary to that contract. *Farias*, 2011 WL

---

[3] Plaintiff also claims that if the insurance policy did not include coverage for spectators and participants in the Kids Fun Day events, then the policy was illusory and against Michigan public policy. (Pl.'s Resp. at 19). Defendant replies that Plaintiff's argument "confuses the subject of insurance with those entitled to bring claims. The policy covered claims brought against its insured by spectators . . . but it did not give spectators and participants a separate right to enforce the policy." (Def.'s Reply at p. 5 fn 4). The Court finds Defendant's explanation sufficient and therefore declines to address the argument.

2175220 at *3, *citing Paragon Sales Co. v. New Hampshire Ins. Co*, 774 S.W.2d 659, 660 (Tex. 1989).

### ii.    Michigan Law Regarding Third-Party Beneficiaries

Michigan law also requires that a third party be an intended beneficiary of a contract in order to enforce it.  Michigan has codified its common law third-party beneficiary rules into statute.  *See* M.C.L. § 600.1405.  In Michigan,

> [a]ny person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

M.C.L. § 600.1405.  "Not every person incidentally benefitted by a contractual promise has the right to sue for breach of that promise . . . only intended, not incidental, third-party beneficiaries may sue for a breach of a contractual promise in their favor."  *Schmalfeldt v. North Point Ins. Co.*, 469 Mich. 422, 427 (2003).

Here, there does not appear to be a conflict between Texas and Michigan law on the critical issue of whether Plaintiff is an intended third-party beneficiary under the alleged NPS-CSI insurance contract.  Although Michigan has codified its rule in statute, both states' laws are nearly identical in that both states require that the promisor's promise was made directly for the third party's benefit.

Because the Court finds that there is no meaningful distinction between the laws of the Texas and Michigan, this is a "false conflict" situation and Michigan law (forum law) will apply.  *Williams v. Toys "R" Us*, 138 Fed. App'x 798, 803 (6th Cir. 2005) ("Because there is no conflict of laws (indeed this is a false conflict situation), we therefore conclude that the district court did not err in

15

applying Michigan state law in this case."); *see also Inland Waters*, 2008 WL 205209 at *7.

**B)** **Under Michigan Law, Plaintiff Has Failed To State A Claim, Sounding in Contract, Upon Which Relief May Be Granted.**

To begin, this case is difficult to parse through because there does not appear to be a formal "contract" between NPS and CSI—or Plaintiff has failed to provide it. Plaintiff did attach to the Amended Complaint the Application for Insurance and Certificate of Insurance (Amd. Compl. at Exs. B & C), asserting that those documents "represent" the "contract" between NPS and CSI; Defendant does not appear to dispute this claim.

Plaintiff relies almost solely on the *Auto Owners* case to support her breach of contract cause of action on an intended third-party beneficiary theory. The Court finds that while *Auto Owners* may have supported the Cleveland Indians' negligence claim against CSI, its reasoning does not support Plaintiff's breach of contract claim here.

In *Auto Owners,* a limousine owner attempted to procure auto insurance through an insurance agent. The insurance agent failed to procure the requested insurance, and several passengers of the limousine were subsequently injured in an automobile accident. The injured parties' claims were assigned to the plaintiff, Auto Owners Insurance Company, pursuant to Michigan's Assigned Claims statute governing uninsured motorist claims. *Auto Owners*, 223 Mich. App. at 209-10. Plaintiff, through equitable subrogation, had the authority to enforce the injured claimants' rights, if any, against the insurance agent. *Id.* at 211.

One of the main issues in *Auto Owners* was whether the injured claimants were intended third-party beneficiaries of the alleged insurance contract between the insurance agent and the limousine owner. *Id.* at 212. The Michigan Court of Appeals answered in the affirmative, stating

16

that "when [the limousine owner] attempted to purchase insurance . . . , intended beneficiaries of the alleged insurance contract included unspecified passengers in the car such as claimants." *Id.* at 212. The court held that claimants (and, as claimants' subrogree, the plaintiff) had negligence and contract causes of action against the insurance agent. *Id*.

Although it initially appears to be on point, *Auto Owners* is distinguishable from the present case regarding Plaintiff's breach of contract claim. The *Auto Owners* case involves no-fault automobile insurance, which, in Michigan, is governed by an entirely distinct statutory scheme. *See generally* M.C.L. § 500.3101 *et. seq*. All of the cases that the *Auto Owners* opinion cites in support of its holding on the third-party beneficiary issue are cases involving automobile insurance. One of those cases even cites "the peculiar significance of automobile liability insurance" as partial justification for its holding that injured third parties were intended third-party beneficiaries to an insurance contract. *Gothberg v. Nemerovski*, 58 Ill. App. 2d 372, 385, 208 N.E.2d 12, 20 (Ill. App. Ct. 1965) ("Because of the peculiar significance of automobile liability insurance as well as the provisions of the policy contemplated by the parties and eventually issued, we do not agree with defendant's theory [that plaintiff is not a third-party beneficiary."]). While the law as set forth in *Auto Owners* may be applicable in a general negligence context, the Court finds that breach of contract claims involving automobile insurance contracts appear to be treated differently than claims based on other contracts – even other insurance contracts. Therefore, the Court finds that *Auto Owners* does not govern Plaintiff's breach of contract claim.

Instead, *Schmalfeldt* is more applicable to the present case, as it, too, concerns general liability insurance rather than no-fault automobile insurance. *See generally Schmalfeldt*, 469 Mich. 422. In *Schmalfeldt*, a bar patron was injured in a bar fight and required extensive dental repairs.

17

*Id.* at 424. The bar's insurance contract provided up to $5,000 in coverage for medical expenses arising from an accident on the bar's premises. *Id.* The insurer refused to pay benefits to the plaintiff unless the bar, its insured, so requested. The plaintiff sued the bar's insurer, claiming to be a third-party beneficiary to the insurance contract between the insurer and the bar. *Id.*

The Michigan Supreme Court, citing Michigan's third-party beneficiary statute, stated that the "focus of the inquiry . . . should be whether [defendant], by its agreement to cover medical expenses for bodily injuries caused by accidents, had undertaken to give or to do or refrain from doing something directly to or for [plaintiff] pursuant to the statute . . . ." *Id.* at 429. The court went on to hold that plaintiff was not an intended beneficiary of the insurance contract, noting that

> [n]othing in the insurance policy specifically designates [plaintiff], or the class of business patrons of the insured of which he was one, as an intended third-party beneficiary of the medical benefits provision. At best, the policy recognizes the possibility of some incidental benefit to members of the public at large, but such a class is too broad to qualify for third-party status under the statute.

*Id.*

Plaintiff never addresses Michigan's third-party beneficiary statute, or whether it supports or defeats her contract claim. In the absence of any reason to find otherwise, the Court concludes that the third-party beneficiary statute applies in this situation and that Plaintiff does not qualify as a third-party beneficiary under the statute. Thus, Plaintiff cannot enforce the alleged insurance contract between NPS and CSI.

Plaintiff has made no factual allegations indicating that NPS and CSI contracted with the intent to benefit Plaintiff or the class to which her husband belongs (i.e. persons who may be injured at the Kids Fun Day events). Rather, the presumption stands that NPS and CSI intended to benefit themselves; Defendant wanted the financial benefit of doing business with NPS, and NPS needed

18

the protection of general liability insurance against any claims that it might face as a result of producing the Kids Fun Day event. Plaintiff makes no effort to explain how "the form and meaning of the contract itself" shows that Plaintiff is an intended beneficiary. *See Schmalfeldt*, 469 Mich. at 429. Without such a showing, Plaintiff cannot be an intended third-party beneficiary under the "contract."

Because the Court finds that Plaintiff has not sufficiently alleged that she is an intended beneficiary under the NPS-CSI contract, any benefit that the contract may have provided to her is purely incidental. Incidental beneficiaries may not sue for breach of contract. *Id.* Therefore, this Court shall GRANT Defendant's Motion to Dismiss Plaintiff's Breach of Contract claim.

**CONCLUSION & ORDER**

For the reasons set forth above, the Court hereby GRANTS Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. #14), and DISMISSES WITH PREJUDICE Plaintiff's First Amended Complaint.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: February 28, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 28, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

19
